**GIRARD TRUST CORN EXCHANGE BANK et al.**

v.

**The UNITED STATES of America.**

**Civ. A. No. 32322.**

United States District Court
E. D. Pennsylvania.

Sept. 20, 1966.

Gordon W. Gerber, Dechert, Price & Rhoads, Philadelphia, Pa., for plaintiffs.

Merna B. Marshall, Asst. U. S. Atty., Philadelphia, Pa., Arthur Stern, Dept. of Justice, Washington, D. C., for defendant.

OPINION AND ORDER RE DEFENDANT'S MOTION FOR JUDGMENT N.O.V. OR IN THE ALTERNATIVE, A NEW TRIAL

WOOD, District Judge.

Jurisdiction is predicated on section 1346 of Title 28, Judiciary and Judicial Code, Act of June 25, 1948, c. 646, 62 Stat. 933, as amended, 28 U.S.C. § 1346.

Art McLaughlin, Inc. (hereinafter referred to as "McLaughlin") in March 1958 to the latter part of December 1959 was a New Jersey corporation which owned and operated an automobile agency at Pennsgrove, New Jersey. After it entered into business it obtained a series of loans from the Girard Trust Corn Exchange Bank (hereinafter referred to as "Girard") for the purpose of financing the purchase of automobiles. As security for the loans, McLaughlin signed trust agreements on the automobiles in the usual manner providing that at the time of the sale of any automobile the trust agreement would be complied with. There were a series of violations which are unimportant to the issues in this case but which resulted in an agreement between McLaughlin and Girard whereby the bank would supervise the operation of the business and under which, inter alia, they were to "have absolute charge of all office routine and operations" and further "to pay as the Bank will allow, accounts payable, taxes, and daily operating expenses including salaries and overhead." From September 1958 to December of 1959, the bank did in fact at all times have its duly authorized representatives at the place of business and did at least supervise control

of income and expenses and no check could be paid on behalf of McLaughlin without the countersignature of Girard from a special account set up for that purpose. It was the contention of the government that during the above period Girard was in fact the employer as defined under Sections 3102 and 3402 of the Internal Revenue Code of 1954 [1] and having failed to pay over to the government withholding taxes during the last three quarters of 1959 that they were subject to assessment under Sections 6671 and 6672 [2] for failure to do so and further that under the latter section they were subject to a 100% penalty assessment as provided for in Section 6672. The penalty was assessed and was paid whereupon Girard brought this action to recover the sum of $4,398.62, which they claim was illegally assessed.[3]

The legal issue obviously was whether or not Girard was in fact the "employer" during the period in question and therefore a "person" responsible for the payment of the taxes and subject to penalty assessment for failure so to do.

■ At the outset we point out that one of the problems in the case was that the government, as admitted at argument, was unable to show the exact allocation of funds received after the bank took over the financial operation of the business. The record does not disclose what taxes were paid from September 1958 to December 1959, although it is a reasonable conclusion and uncontradicted that some taxes were paid by the bank (N.T. 114). It further does not disclose how the government allocated these payments, whether to obligations of McLaughlin prior to September 1958 or afterward, but it is a fair assumption that they allocated them to prior indebtedness of McLaughlin since the testimony reveals that there were three quarterly payments due in 1958 and also three quarterly payments due at the end of 1959. The uncontradicted evidence is that the amount owed the government when they did take over in September of 1958 was substantially the same as when the business was liquidated in the latter part of December 1959. We mention this because the jury in finding in favor of the bank could well have concluded that the government suffered no actual loss during the period from September 1958 to December 1959. The above and collateral facts were submitted to the jury following the charge to which no exception worthy of note was taken. The government persistently argues that as a matter of law the bank was in fact the "employer" since they had absolute control of the operation of the business and notwithstanding anything to the contrary, the bank was responsible for the withholding taxes of the last three quarters of 1959. We held at the time of the trial and do now that the question of whether the bank was the actual "employer" was a

1. Section 3102 as amended provides, inter alia, that "The tax imposed by section 3101 shall be collected by the employer of the taxpayer, by deducting the amount of the tax from the wages as and when paid." Section 3402 also provides, inter alia, that "Every employer making payment of wages shall deduct and withhold upon such wages * * * a tax * * *."

2. Section 6671(a) provides, inter alia, that:
    "The penalties and liabilities provided by this subchapter shall be paid upon notice and demand by the Secretary or his delegate, and shall be assessed and collected in the same manner as taxes. * * *"
    Section 6672 provides:
    "Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. * * *"

3. The original assessments were against the bank and three of its employees, and the action was brought by the bank jointly with the three individuals. Prior to trial it developed that the bank had in fact paid the assessments, and we dismissed the original action brought by the three individuals. There was and has not been any objection to this procedure.

question for the jury, and we further held that if they were the "employer" they were under the various sections of the Code a "person" responsible for the payment of the taxes. In fact, we charged the jury as follows:

"[I]f * * * you conclude * * * that in effect the Girard Bank was operating this business, they were the employer, they controlled the payment of taxes, bills, the accounts, why then you could conclude—and I think you should conclude—that they were responsible for the payment of these withholding taxes." (N.T. 198).

And further we stated:

"Now in determining whether or not the bank was liable for payment of these taxes, here are some of the things that you might consider. Who was in control of this business operation, generally speaking? Specifically speaking, who had control of the hiring and discharging of the employees? Who had the control of the receipt of funds and the deposit of funds? Who had control of paying the bills? Who had control of approving credit given to customers of the establishment? Who had control over the purchase and sale not only of products which they sold but products which they used? Who had control of the books of the corporation, who in fact was the actual person operating this business? * * * Were they an employer?" (N.T. 197).

Aside from clear and uncontradicted proof that the bank had unlimited control of the financial operation of the business, there was no evidence that the bank participated in decisions involving buying and selling cars, receiving trade-ins, setting allowances, insurance, operation of the service department, preparation of tax forms, hiring or firing of employees or similar matters, It was the bank's contention that it served, as they describe it, simply in a "watchdog" capacity to protect the amount of their investment which was substantial and eventually amounted to $74,000.00.

Of course, it is fundamental law that all reasonable inferences which may be drawn from the testimony should be deemed in favor of the party obtaining the verdict, and in our opinion, there was sufficient evidence elucidated from which the jury could find that while the bank at least controlled the financial operation that it was not an employer in fact, but that McLaughlin continued to be the employer notwithstanding his agreement with the bank to supervise the operation of the business.

Of course, the question is now moot as to whether or not the bank was a "person" within the meaning of the Act since in any event the jury found that they were not responsible for the payment of the taxes. One other point deserves some discussion. The government in its brief argues that we should have charged the jury that even though McLaughlin was responsible for the payment of the taxes, the bank could also be responsible. We see no merit to this argument since the action was brought against the bank alone and in fact, they requested that we charge that "the only question in this case is whether the Girard Trust Corn Exchange Bank is liable for the taxes. The fact that someone else may or may not also be liable for these taxes should not affect your verdict." They now argue that we should have instructed the jury that if they found both the plaintiff and McLaughlin responsible for the failure to pay over, the bank would still be liable. This we do not believe to be proper in the circumstances of this case, and so informed counsel at that time, since the entire theory of the defendant's case was that the bank and *no one else* was responsible for the payment.

The bank has adequately raised the question as to whether or not the government can now request judgment n. o. v. in view of its failure to move under Rule 50(b) at the close of all the evidence. There is considerable merit to this argument, but we will not pass upon it in view of our decision that the government is not entitled to judgment n. o. v. under any circumstances, since there was a clear

**218**

factual question raised as hereinbefore set forth which required consideration by the jury. Accordingly, we enter the following:

### ORDER

And now, this 20 day of September, 1966, it is ordered that the defendant's motion for judgment n. o. v. is denied and defendant's motion in the alternative for a new trial is denied. If it has not been done, the Clerk is directed to enter judgment on the verdict in favor of the plaintiff.